Argued November 4, reversed June 6, 1978

SHANNON, *Respondent,*
*v.*
CARTER, *Defendant,*
and
ASSOCIATES FINANCIAL SERVICES CO.,
WESTERN, *Appellant.*
(No. A 7611-16772, SC 25062)

579 P2d 1288

Floyd Hinton, of Deich, Deich & Hinton, Portland, argued the cause and filed the brief for appellant.

Nancy M. Helget, Portland, argued the cause for

[ 449 ]

respondent. With her on the briefs was R. M. Atkinson, Portland.

James C. Waggoner, of Martin, Bischoff, Templeton & Biggs, Portland, and Matthew W. Chapman, of Davies, Biggs, Strayer, Stoel & Boley, Portland, filed a brief amici curiae.

Before Denecke, Chief Justice, Holman, Tongue*, Bryson, Lent, Linde, Justices, and Gillette, Justice Pro Tempore.

DENECKE, C. J.

---

*Tongue, J., did not participate in the decision in this case.

## DENECKE, C. J.

The sole issue is whether the defense of recoupment, based upon a violation of the Truth in Lending Act (TILA), is barred because of the statute of limitations in the TILA.

The defendant Associates Financial Services brought an action in district court in February 1976 to recover $355, the balance owing by plaintiff, Kathleen Shannon, on a retail installment contract for furniture and appliances entered into by Shannon in July 1974. Shannon asserted as an affirmative defense in the nature of recoupment a claim that Associates had violated the TILA, 15 USC § 1601 et seq. Section 1640 of the TILA provides that the creditor violating the TILA is liable for twice the amount of any finance charge. Shannon alleged the finance charge was $1,255.74.

Associated demurred on the basis that the statute of limitations in the TILA barred the defense. The demurrer was sustained and judgment in favor of Associates was entered. Shannon filed a petition for writ of review in the circuit court contesting the sustaining of Associates' demurrer. The circuit court held that the demurrer was improperly sustained. We reverse.

The TILA provides: "Any action under this section [civil liability for violation of the TILA] may be brought * * * within one year from the date of the occurrence of the violation." 15 USC § 1640(e). Shannon argues and we will assume, that because we are construing a federal statute, federal law applies.[1]

■ A party may be barred by the passage of time from making a claim as an affirmative assertion, but, nevertheless, may, under certain circumstances, assert that claim as a defense by way of recoupment.

[1] Shannon concedes that if Oregon law were applied her claim would be barred under our decision in *Lamb v. Young*, 250 Or 228, 441 P2d 616 (1968).

[ 451 ]

*Bull v. United States,* 295 US 247, 261-262, 55 S Ct 695, 79 L Ed 1421 (1935); *United States v. Western P. R. Co.,* 352 US 59, 72-73, 77 S Ct 161, 1 L Ed2d 126 (1956). The difficult question is: What are those circumstances which permit a claim to be advanced as recoupment although the statutory period for affirmatively bringing an action on such claim has expired?

*Burnett v. New York Cent. R. Co.,* 380 US 424, 426-436, 85 S Ct 1050, 13 L Ed2d 941 (1965), essentially held that the court must look to congressional intent to determine if the statute of limitations in a federal statute can be extended. In that case it held the Federal Employers' Liability Act could be extended. The court stated:

> "In order to determine congressional intent, we must examine the purpose and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act. * * *." 380 US at 427.

*American Pipe and Construction Co. v. Utah,* 414 US 538, 558, 94 S Ct 756, 38 L Ed2d 713 (1974), reaffirmed the principle of *Burnett v. New York Cent. R. Co., supra* (380 US 424).[2]

Section 1601 of the TILA provides, in part: "It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." Regulations promulgated pursuant to the TILA require the lender to inform the borrower of, among other things, the effect of prepayment, the annual interest rate, and what after-acquired property is covered by the lender's security interest. The complaint alleges the lender failed to make these disclosures to plaintiff.

---

[2]In these cases the Court rejected the proposition that if the time limitation is part of the right itself and not a limitation only upon the remedy, the time cannot be extended.

The TILA provides for enforcement by administrative agencies, criminal sanctions and civil liability. The original section 1640 provided that the civil liability would be twice the amount of the finance charge, but not less than $100 or more than $1,000. Attorney fees were also awardable. This section was later amended to provide, in addition, that the debtor could recover actual damage and provisions were made applicable to consumer leases and class actions.

The purpose, the substantive provisions and the enforcement provisions do not provide any direct indication of congressional intent on the issue we must solve. The enforcement provision, however, when coupled with the reason why recoupment is not always barred although the statute of limitations has run, provides, in our opinion, the only clue to what Congress intended.

> " ' "Recoupment" ' [which was a defense at common law] is defined to be "the keeping back and stopping something which is due." '. *Krausse v. Greenfield,* 61 Or 502, 507, 123 P 392, Ann Cas 1914B 115. The term is of French origin and means the 'cutting back' of the plaintiff's claim by the defendant. Recoupment is confined to matters arising out of and connected with the transaction upon which the action is brought. * * *." *Rogue River Management Co. v. Shaw,* 243 Or 54, 58-59, 411 P2d 440 (1966).

In *Lamb v. Young,* 250 Or 228, 230, 441 P2d 616 (1968), we stated:

> "The reason for the rule that the general statute of limitations does not bar the assertion of a claim by way of recoupment, although the claim would be barred if it were made the basis of a claim for affirmative relief, has not been clearly articulated. * * *."

■ Further research in this case and another has enabled us to find statements which support our idea of what the reason must have been. Lord Kenyon said in *Ord v. Ruspini,* 2 Esp 568, 569 (King's Bench 1793-1793): "* * * [A]s the transactions between the plaintiff and the defendant were all of the same date,

and as the bills seem to have been given for their mutual accommodation, it would be the highest injustice to allow" plaintiff to maintain his claim but to hold the defendant was barred from maintaining his recoupment because of the statute of limitations.

In *Jewell v. Compton,* 277 Or 93, 97, 559 P2d 874 (1977), we quoted from *Gibbins v. Kosuga,* 121 NJ Super 252, 258, 296 A2d 557, 560-561 (1972):

" '* * * To hold differently [not to allow recoupment] would be to permit the inequity of one party to a transaction demanding full performance from the other while refusing to perform fully itself.' "

*Wright v. Hage,* 214 Or 400, 330 P2d 342 (1958), is an example of how it would be obviously inequitable or unjust to not allow a defendant to claim recoupment although the statute of limitations had run. At plaintiffs' urging, defendants bought turkeys from plaintiffs and paid for them with a promissory note payable to plaintiffs. Plaintiffs, in turn, promised to buy turkey eggs from defendants and credit the price paid for the eggs on the note. Plaintiffs sued on the note. We held defendants could advance by way of recoupment damages caused by plaintiffs' breach of the contract to buy eggs although defendants could not have made such an affirmative claim because the statute of limitations had run.

The primary purpose of § 1640, entitled "Civil liability," is enforcement of the TILA, not compensation for injury that the debtor suffered. This is evidenced by the fact that the original act had no provision permitting the debtor to recover for actual damage suffered. The plaintiff states in her brief: "Congress intended private civil actions to be the primary method of enforcing the Truth in Lending Act." (Amici contend to the contrary.)

Congress has provided that debtors bringing private civil actions to enforce the TILA must file their actions within one year from the date of the occurrence of the violation. It is not "unfair" or "unjust" to hold

that if they fail to attempt to enforce the provisions of the act within the one year by affirmative action they are barred from doing it by way of defense. Whatever monetary gain debtors may receive from private civil action is primarily intended not as compensation for injury to debtors but as a deterrent for lenders.

It may be argued that usually debtors will first become aware of violations of the TILA when the debtor becomes delinquent, is sued by the creditor, and the debtor consults an attorney; and this is frequently more than one year after the violation. If this is a practice so common that we should accept it as a legislative fact, the practice certainly would have been brought to the attention of Congress and caused it either to provide for a longer statute of limitations or to provide that the statute does not apply to claims made by way of defense.

Other courts have had divergent opinions on this issue. Some of the decisions holding the debtor was not barred are: *Wood Acceptance Co. v. King.* 18 Ill App3d 149, 309 NE2d 403 (1974) (decision partly grounded upon Illinois statute); *Termplan Mid-City Inc. v. Laughlin,* 333 S2d 738 (La App 1976) (decision based upon Louisiana statute); *Reliable Credit Serv., Inc. v. Bernard,* 339 S2d 952 (La App 1977).

Some of the decisions holding to the contrary are: *Hodges v. Community Loan & Investment Corp.,* 133 Ga App 336, 210 SE2d 826 (1974), affirmed as modified, 234 Ga 427, 216 SE2d 274 (1975) (basis for recoupment, "not an integral part of the action for money had and received" 210 SE2d at 831); *Ken-Lu Enterprises, Inc. v. Neal,* 29 NC App 78, 223 SE2d 831 (1976) (based upon 1974 amendment; now § 1640(h)); *Gillis v. Fisher Hardware Company,* 289 S2d 451 (Fla App 1974).

Reversed.